**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| William Cochran, *Plaintiff*, | ) | No. 25 C 2642 |
| v. | ) | |
| T. Bufford et al., *Defendants*. | ) | Chief Judge Virginia M. Kendall |

## MEMORANDUM OPINION & ORDER

Following two attacks by fellow inmate Damariea Credit, Plaintiff William Cochran brought this six-count action under 42 U.S.C. § 1983 against Sergeant Bufford, Officer Dangerfield, Sheriff Thomas Dart, and Cook County .(Dkt. 44). Cochran brings Counts I and II against Bufford in her individual capacity, Counts III and IV against Dangerfield in his individual capacity, and Counts V and VI against Dart in his official capacity.[1] Cochran finally seeks indemnification from Cook County. (Dkt. 44). Pending now before the Court is the Defendant's Motion to Dismiss Cochran's Amended Complaint in full. (Dkt. 55). For the reasons below, Defendants' Motion is granted in part and denied in part [55].

## BACKGROUND

The Court draws the relevant facts from Cochran's Amended Complaint and accepts as true all reasonable inferences in Cochran's favor. Cochran, now incarcerated at the Dixon Correctional Health Center, experienced two attacks as a pretrial detainee at the Cook County Jail. (Dkt. 44 ¶ 1). On April 23, 2023, Credit attacked Cochran on the first floor of the Jail's "Tier 2-H

[1] While Cochran's Amended Complaint brought Counts V and VI against Dart in his individual and official capacity, Cochran has since clarified that he intends only to pursue Counts V and VI against Dart in his official capacity.

Division 9" dayroom. (*Id.* ¶¶ 9-26). The dayroom's first floor is one large space with a television, long tables, and a door. (*Id.* ¶ 12, n.1). One side of the lower level is flanked by cells. (*Id.*) The dayroom's upper balcony is also lined with cells. (*Id.*) Credit was assigned to Tier 2-h Division 9 on "house-alone-out-alone status" ("HAOA"). (*Id.* ¶ 13). Detainees are assigned this status for a variety of reasons, including if they have a history of violence and pose a danger to other detainees. (*Id.* ¶ 16). Detainees with this status are not permitted to have a cellmate or be out of their cells in the presence of other detainees. (*Id.* ¶¶ 14-15). Division 9 detainees with this status must be cuffed with their hands behind them and wear an additional waist chain restraint. (*Id.* ¶ 17).

At the time of the attack, Cochran was near the dayroom's door talking to Bufford. His hands were cuffed to the front of his body and were attached to a waist chain restraint. (*Id.* ¶¶ 10-11). Meanwhile, Dangerfield had removed Credit from his upper-dayroom-level cell in order for Credit to take medication. (*Id.* ¶ 12). Dangerfield handcuffed Credit's hands loosely to the front of his body with no additional restraints such as a waist chain restraint. (*Id.*) Dangerfield allowed Credit to descend the stairs and walk across the dayroom where he approached Cochran, raised his loosely cuffed fists, and struck him on the head twice with extreme force. (*Id.* ¶ 19). The blows caused Cochran immediate blinding pain and bleeding. (*Id.* ¶ 23). Cochran suffered from ongoing headaches, emotional distress, and post-traumatic stress disorder following the attack. (*Id.*) Cochran alleges that Bufford saw Credit approaching him but that Credit blindsided Cochran with the attack. (*Id.* ¶¶ 20-21). A third unnamed officer restrained Credit after the attack. (*Id.* ¶ 24). Dangerfield was not present for the attack; he descended the stairs into the dayroom's lower level after the unnamed officer restrained Credit. (*Id.* ¶¶ 25-26). Bufford did not try to stop or intervene in the attack. (*Id.* ¶ 22).

On the evening of February 26, 2024, Credit attacked Cochran again. (*Id.* ¶¶ 31, 32). Shortly after officers escorted Cochran from Division 9 Tier 3-E to Tier 1-D, the officers allowed him to use the restroom unescorted. (*Id.* ¶ 33). While in the restroom, Credit—again unescorted—attacked Cochran for the second time. (*Id.* ¶ 34). This attack knocked Cochran unconscious. (*Id.* ¶ 35). As Cochran regained consciousness, an officer dragged him to the medical ward. (*Id.* ¶ 36). This attack caused Cochran pain, bleeding, emotional distress, and post-traumatic stress disorder. (*Id.* ¶ 37).

## I. Counts I-IV Against Bufford and Dangerfield in their Individual Capacities

In Counts I-IV, Cochran alleges that Bufford and Dangerfield knew or should have known Credit's status as a HAOA detainee and that they failed to protect Cochran during the 2023 incident. Counts I and III allege that Bufford and Dangerfield knew that Credit was on HAOA status and that regardless of their knowledge they "took no reasonably available action to protect" him from the attack causing his injury (*Id.* ¶¶ 43-46, 49, 59-61, 63). Cochran claims that Bufford and Dangerfield could have, for example, demanded that Credit stop walking towards other detainees or ordered other detainees into their cells. (*Id.* ¶¶ 47, 62). He further alleges that Bufford could have instructed Dangerfield to restrict or escort Credit (*id.* ¶ 47) and that Dangerfield could have handcuffed or transported Credit in a more restrictive manner. (*Id.* ¶ 62).

Cochran brings Counts II and IV in the alternative to Counts I and III. Counts II and IV allege that Bufford and Dangerfield intentionally did not know that Credit was on HAOA status because they turned a "blind eye" to detainees' HAOA designations despite knowing that some detainees with a propensity for violence carried this status. (*Id.* ¶¶ 51, 55, 65, 69). Bufford and Dangerfield should have known Credit's status because the Jail makes these records reasonably available to staff members and requires that staff members be familiar with detainee designations.

(*Id.* ¶¶ 51-53, 55, 66-68). Counts II and IV posit that Bufford and Dangerfield's deliberate ignorance caused his injuries, reasoning that if Bufford and Dangerfield had known Credit's status, they would have taken steps to prevent the attack. (*Id.* ¶¶ 56-57, 70-71).

## II. Counts V and VI Against Dart in His Official Capacity

Count V alleges that Dart failed to promulgate policies that sufficiently protected detainees from those on HAOA status, which led to the 2023 attack. (*Id.* ¶¶ 72-85). At the time of the incidents, Dart was the Cook County Sherriff and responsible for creating and implementing policies that affected operations of the Jail. (*Id.* ¶ 4). Bufford alleges that Dart knew that detainees with an HAOA status posed a risk to other detainees and that, without proper separation and restraint, they would attack other detainees. (*Id.* ¶¶ 74-76). Cochran asserts that despite this knowledge Dart intentionally failed to implement policies to ensure (a) that correctional staff were aware of which detainees had HAOA status, and (b) that officers adequately escorted or restrained detainees with this status. (*Id.* ¶¶ 77-78). Bufford reasons that by failing to establish these policies Dart disregarded "the obvious risk" that violent detainees would attack others. (*Id.* ¶ 79). Count V also points to various other lawsuits where detainees allege attacks by fellow inmates to support the assertion that Dart knowingly disregarded the risk of properly separating or adequately detainees with a history of violence. (*Id.* ¶¶ 80-82).[2] Cochran claims that Dart's failure to promulgate properly protective policies caused Bufford and Dangerfield's ignorance of how to restrain Credit and Credit's subsequent attack. (*Id.* ¶¶ 83-84).

---

[2] Cochran cites the following cases and offers their respective parentheticals in support of his *Monell* claims: cites *King v. Szul*, 2025 WL 712068, at *1 (N.D. Ill. Mar. 5, 2025) ("detainee attacked . . . by fellow detainee who threw boiling water"); *Bowers v. Dart*, 1 F.4th 513, 516 (7th Cir. 2021) ("detainee attacked in 2012 in housing block hallway of Cook County Jail"); *Clark v. Cook Cnty. Sheriff's Off.*, 2024 WL 148242, at *1 (N.D. Ill. Jan. 12, 2024) ("detainee attacked . . . by fellow detainee who struck him in head with wheelchair, causing brain injury").

Count VI alleges that Dart intentionally failed to use his authority to properly implement the Jail's "keep separate from" designation, which requires the separation of detainees with a history of violence targeted towards specific individuals and that this failure led to the 2024 attack in the bathroom. (*Id.* ¶¶ 90-91). Again citing the same string of lawsuits from Count V, Count VI asserts that Dart knowingly disregarded the risk of properly separating or adequately detaining inmates with a history of violence towards each other thereby causing the February 2024 attack. (*Id.* ¶¶ 92-95). Count VI finally claims that Cook County must indemnify any damages, fees and costs Cochran recovers through these claims. (*Id.* ¶ 96).

The Defendants moved to dismiss all six counts under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 55). They allege that Counts I-IV should be dismissed because Cochran fails to plausibly state failure-to-protect claims against Bufford and Dangerfield. As to Counts I-II, they maintain that Cochran fails to state a viable failure-to-protect claim against Bufford because Bufford was not on notice that Credit posed a particularly high risk to Cochran and because Bufford did not make decisions regarding Cochran's housing. (*Id.* at 10-11).[3] With respect to Counts III and IV, the Defendants argue that Dangerfield was not on notice that Credit posed a particularly high risk to Cochran. (*Id.* at 11-12). The Defendants further argue that the Court must dismiss Cochran's *Monell* claims in Counts V and VI because Cochran insufficiently alleges that Dart failed to implement the alleged policies. (*Id.* at 6-11). In the alternative, the Defendants request that the Court bifurcate discovery and stay Cochran's *Monell* claim pending completion of

[3] The Court notes that the parties seemed confused about whether Cochran's failure to protect claims in Count I-IV applied as to only the 2023 incident or as to both the 2023 and 2024 incidents. Cochran has confirmed that he does "not seek relief against Bufford or Dangerfield in connection with the February 2024 attack." (Dkt. 60 at 7). Accordingly, the Court declines to address Defendants' arguments pertaining to Bufford and Dangerfield's role in the 2024 attack.

discovery on the individual claims. (*Id.*) The Defendants finally argue that the Court should dismiss Cook County because Cochran fails to state a claim against it. (*Id.* at 12).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court accepts "well-pleaded allegations of fact as true and draw[s] all reasonable inferences in the plaintiff's favor." *Miao v. United Airlines, Inc.*, 164 F. 4th 622, 623 (7th Cir. 2026). The Court will "not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (internal citation omitted).

## DISCUSSION

Because Cochran was a pretrial detainee at the time of the incident, his claims arise under the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 393 (2015). To "state a viable failure-to-protect claim under the Fourteenth Amendment, a pretrial detainee must allege: (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by

not taking such measures, caused the plaintiff's injuries." *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). As part of the third element, Cochran must plausibly allege "that a reasonable officer" in the defendant's position "would have appreciated the high degree of risk the detainee was facing." *Thomas*, 39 F.4th at 841. The Court applies an objective reasonableness standard. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 350-51 (7th Cir. 2018). In other words, Cochran must show that Bufford's failure to protect him was objectively unreasonable. *Kemp v. Fulton County*, 27 F.4th 491, 497 (7th Cir. 2022); *see Kingsley*, 576 U.S. 389, 396-97 (2015).

## I. Counts I and II Against Bufford

The Defendants argue that dismissal is proper because Cochran cannot show that Bufford made any decisions about the conditions of Cochran's confinement and because Cochran fails to allege that Bufford was aware that Credit presented a uniquely high risk to Cochran. (Dkt. 55 at 10-11). Cochran, however, alleges that Bufford—a Jail employee—knew or had access to the knowledge that Credit had HOAO status. (Dkt. 44 ¶¶ 41, 45, 51-54). Cochran alleges that Bufford therefore knew or should have known that Credit could not be released into a populated area or be out of his cell without proper cuffing. (*Id.* ¶¶ 15-17). Cochran alleges that Bufford nonetheless failed to take any measures to protect Cochran once Bufford became aware that Credit was improperly restrained and amongst the general population. (*Id.* ¶¶ 46-47). A reasonable officer would have taken ***some*** steps to try to contain Credit, like ordering Credit to stop walking or demanding that he be properly restrained. (*Id.* ¶ 47). Cochran alleges that Bufford did not do so. (*Id.*) Accordingly, Cochran's Amended Complaint raises a plausible inference that through Bufford's failure to take any protective measures, she made an intentional choice to allow Credit among the other detainees, thus modifying Cochran's conditions of confinement and putting

Cochran at risk of harm. (*See also* Dkt. 5 at 2). Because Cochran alleges sufficient facts to meet the "failure to protect" standard as to Bufford's conduct, Counts I and II may proceed.

The Court also notes that the Defendants offer two broader arguments that apply to Cochran's claims against Bufford and Dangerfield. Neither warrants dismissal of Counts I-IV. First, the Defendants stress that jails are dangerous places brimming with people who have demonstrated aggression and that a general risk of violence is insufficient to establish officers' knowledge of a substantial risk of harm. (*See e.g.*, Dkt. 55 at 9-10). It is true that "simply being housed in [a jail's] general population . . . is not a particular enough risk in the failure-to-protect context." *Thomas*, 39 F.4th at 842. Nonetheless, this principle does not apply here because Cochran alleges that the officers knew or should have known that Credit's ***specific*** status of HOAO distinguished him from the general population. Second, the Defendants maintain that Cochran's Amended Complaint alleges that Credit was not permitted to leave his cell for medication administration. (Dkt. 55 at 12). As Cochran rightly points out, however, his Amended Complaint says nothing about whether Credit could leave his cell to receive medicine. (Dkt. 60 at 5-6). Rather, Cochran alleges that Dangerfield and Bufford failed to ***properly*** escort Credit to retrieve his medication. (Dkt. 44 at 2-4, Dkt. 60 at 5-6).

## II. Counts III and IV Against Dangerfield

The Court next addresses Cochran's claims against Dangerfield. The Defendants argue that dismissal is proper because Dangerfield did not know that Credit posed a risk to Cochran aside from the general dangers within jails. (*Id.* at 10-11). Cochran, however, specifically alleges that Dangerfield, as a Jail staff member, knew or at least had access to the knowledge, that Credit had HAOA status and that this status required officers to separate Credit from other detainees and

handcuff his hands behind his back with an additional restraint around his waist. (Dkt. 44 ¶ 17). These allegations are far more specific than a mere claim that jails are generally unsafe.

In addition to pleading Dangerfield's knowledge, Cochran's claims against Dangerfield plausibly state a viable failure-to-protect claim. Dangerfield decided to release Credit into a common area where other detainees were present and without making efforts to clear the space of those detainees while improperly securing Credit. Accordingly, his decisions shaped the conditions of Cochran's confinement, put Cochran at risk of harm, and resulted in Credit harming Cochran. Moreover, Dangerfield's decisions were not objectively reasonable. An objectively reasonable officer armed with knowledge of Credit's status would have followed protocol. Dangerfield, however, decided to release Credit from his cell and into the dayroom where other detainees were present while only loosely cuffing his hands in front of his body and without closely escorting him. (*Id.* ¶ 12). Because Cochran plausibly pleads all four elements of a failure to protect claim against Dangerfield, Counts III and IV survive dismissal.

## III. Counts V and VI: Cochran's *Monell* Claims

The Court turns finally to Counts V and VI against Dart. Count V pertains to the 2023 attack and alleges that Dart intentionally failed to use his policymaking authority to (a) "implement policies to ensure that correctional staff . . . were made aware of which detainees were on 'house-alone out-alone' status" and (b) "ensure that detainees on house-alone out-alone status were appropriately escorted or restrained such that they were not able to strike other detainees." (Dkt. 44 ¶¶ 77-78). Count VI concerns the 2024 attack and alleges that Dart failed to implement policies to ensure that that Jail properly isolated detainees "with a history of violence targeted at particular individuals" classified with a "keep separate from" status. (*Id.* ¶ 91).

The Defendants argue that Cochran's *Monell* claims must fail for three reasons: first, because Cochran cannot show that any municipal action was the moving force behind his constitutional injury; (Dkt. 55 at 7-8) second, because his Amended Complaint simultaneously alleges that the Jail ***did*** and ***did not*** have insufficient policies regarding informing officers about detainees with house-alone-out-alone status; (*Id.* at 8) and third, because any inaction-based allegations fail to allege that a "gap" in policy caused Cochran's constitutional harm. (*Id.*)

A plaintiff raising a *Monell* claim must first plead depravation of a federal right. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Because Counts I-IV survive dismissal, Cochran satisfies this requirement. A successful *Monell* claim must next "trace the deprivation to some municipal action (i.e., a 'policy or custom'), such that the challenged conduct is properly attributable to the municipality itself." *Id.* (internal citations omitted). At least three types of municipal action may give rise to municipal liability under § 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (internal citations omitted). Cochran's Amended Complaint fails to do this. While his Amended Complaint—backed by citations to other complaints—alleges that "Cook County Jail (and its agents) did not adequately protect detainees who were attacked by other detainees," (Dkt. 44 at 10), it does not plead that Cook County Jail has a widespread custom or practice that has specifically led to mismanagement of detainees on HOAO status that caused detainees to hurt each other. Nor does it explain any link between the cited cases that raise detainee-on-detainee violence with either the HOAO or "keep separate" statuses.

Cochran's Amended Complaint also does not plead sufficient ***inaction*** on Dart's behalf to satisfy *Monell*. Inaction-based liability is a steep path but can exist where there is a "gap in expressed policies." *Orozco v. Dart*, 64 F.4th 806, 842 (7th Cir. 2023). It requires that the municipality have notice that its program—here, its alleged policies—will cause constitutional violations and requires a "known or obvious risk" of constitutional violations. *Id.* Cochran's inaction argument is rooted in his string cite of cases but lacks any discussion connecting those cases with offenses by detainees assigned HOAO status. Critically, Cochran does not plead that the assailants in those cases were on HOAO status, the heart of the policy failures that he alleges. Because Counts V and VI do not surmount the second *Monell* requirement, the Court declines to address the last two *Monell* requirements: moving-force causation or municipal fault. *Dean*, 18 F.4th at 236.

**IV. Cook County's Dismissal**

Lastly, the Defendants argue that the Court should dismiss Cook County because Cochran fails to state a claim against any of the other Defendants. (Dkt. 55 at 12). They cite no other basis for Cook County's dismissal. Because Cochran states a claim against Bufford and Dangerfield, dismissal of the indemnitor defendant is premature.

**CONCLUSION**

Defendants' Motion to Dismiss is granted in part and denied in part [55]. It is granted as to Counts V and VI and denied as to Counts I-IV. Cook County is not dismissed. To the extent that Cochran believes he can cure the insufficiencies in his pleadings as to the dismissed claims in a manner consistent with Rule 11, the Court grants him leave to amend within 21 days of this Order.

Virginia M. Kendall
United States District Judge

Date: November 16, 2026